## The J. I. Case Plow Works

*v.*

## Isaac C. Edwards, Assignee.

*Opinion filed October 24, 1898.*

1. Voluntary assignments—*assignee not chargeable with loss from mere errors of judgment.* ·Mere errors of judgment by an assignee wholly unfamiliar with his assignor's business do not sustain charges of fraud and mismanagement, so as to render him chargeable with the loss thereby sustained.

· 2. Same—*when assignor is not chargeable with shortage of accounts.* An assignee is not chargeable with an alleged shortage of accounts obtained by comparing the inventory with the list of the property disposed of, where it appears that the property was carelessly over-inventoried by servants whom the assignee was compelled by circumstances to employ, and the assignee's sworn statement that he had accounted for all the property he received is not contradicted by competent evidence.

3. Same—*assignee may take goods partly paid for out of bond.* An assignee is justified in paying the duty upon imported goods which are partly paid for, and he is not chargeable with the loss resulting from the fact that the goods failed to bring their cost.

4. Same—*assignee is entitled to credit for salaries paid necessary assistants.* An assignee is entitled to credit for salaries paid to servants, although they may be high, where the nature of the business and the servants' knowledge thereof, coupled with the assignee's entire unfamiliarity therewith, render the employment of those particular servants necessary.

*J. I. Case Plow Works* v. *Edwards,* 71 Ill. App. 655, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the County Court of Peoria county; the Hon. Colostin D. Myers, Judge, presiding.

On December 31, 1892, Kirkwood, Miller & Co. made a general assignment for the benefit of their creditors to Isaac C. Edwards, the appellee. They were conduct-. ing the general business of selling farming implements, wagons, buggies and bicycles, having two establishments, the main one at Peoria, Illinois, and a branch at Cedar

Rapids, Iowa. The assignee took possession of the stock in Peoria immediately, but before he could secure possession of the stock at Cedar Rapids the city marshal of that city had levied on it under four attachments, aggregating over $20,000. The assignee, at the instance of some of the largest creditors of the insolvents, employed Mills & Keeler, attorneys at Cedar Rapids, to contest the attachments for him. Some time in February the attachments were all released and the stock turned over to the assignee, who, after selling the best of it at private sale in Cedar Rapids, shipped the remainder to Peoria. While the stock was still in Cedar Rapids he was sued in replevin for part of the goods by two firms, who claimed that some of the goods in his hands were their goods shipped to the insolvents to be sold on commission. The assignee afterwards turned the goods over to them, but there was an unsettled claim of Sechler & Co. for goods belonging to them which they contended the assignee had sold and refused to account for. The assignee finally compromised the suit. In these replevin suits Mills & Keeler represented the claimants, both, however, being different parties from those who levied the original attachment writs.

After accepting the trust the assignee had an inventory made of the stock on hand, both at Peoria and at Cedar Rapids. For this purpose he had to employ persons familiar with the business, as he himself was totally unfamiliar with it. A large number of petitions were filed in the county court by parties alleging that they had goods in the store rooms of Kirkwood, Miller & Co. which had been shipped to the firm to sell on commission, and asking that their goods be turned over to them. These were all pressed for trial, and it was not until the following April that they were all disposed of. Upon the hearing the court ordered goods to be turned over to the petitioners valued in the inventory at more than $12,000. After selling at private sale for several months, the as-

signee procured an order of the county court authorizing him to sell at auction. On May 26, 1893, he held the final auction sale, disposing of all the balance of the stock on hand. In September he filed his report, to which objections by a number of the creditors, including appellant, were sustained, and he filed an amended report November 3, 1893, and a supplemental report April 12, 1894. Both reports were contested, and evidence was heard at intervals for upwards of a year.

In December, 1895, the county court entered an order charging the assignee, in addition to the amount shown by his report, with items aggregating $9349.70. From this order appellant appealed to the Appellate Court, alleging numerous errors, insisting that the appellee had not been charged with certain items at all and had not been charged sufficiently on others, and objecting to certain credits which had been allowed. Appellee assigned cross-errors, and the Appellate Court struck out most of the items charged against the assignee by the county court. From this decision appellant has again appealed, and the assignee has assigned cross-errors here.

JACK & TICHENOR, for appellant.

McCULLOCH & McCULLOCH, and GEORGE B. FOSTER, (DAVID E. POWELL, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The appellant, in support of its alleged several errors, charges the assignee with fraud and mismanagement. We have read the voluminous evidence carefully and do not find the charges sustained. Errors of judgment, and mistakes, have doubtless occurred, and it may be that other persons might have managed the affairs of the insolvents to better advantage, for the assignee had never had any experience in business of the kind carried on by the insolvents, but we find no sufficient evidence in the

record to sustain this charge against him. The original inventory of stock on hand footed up over $60,000, part of which, however, was afterwards turned over, by order of the court, to other parties. This stock was stored on three floors and in the basement of a large three-story building and in several other basements and sheds. It had accumulated for several years, and a large portion of it was in bad order. A large number of articles were stored "knocked down,"—that is, in parts, not set up complete, and the different parts were stored in various places and on different floors, some in different buildings. In taking the inventory the different articles were not all handled, and no effort was made to ascertain whether all the articles that were "knocked down" and inventoried as complete were really complete in all their parts. In some lines, notably the harness department, the inventory was taken from tags on the outside of boxes and packages, without examining the contents. Appellee contends that in all these cases the inventory was incorrect, and when they put together the "knocked down" articles and opened the boxes preparatory to a sale many pieces were found to be missing and some of the boxes which had been inventoried were empty. Some of the parts were inventoried separately when they had already been counted in the complete vehicle or article. The assignee was compelled, by the circumstances, to employ the servants of his assignors, as they were the only persons familiar with the stock and the books and accounts. The books had not been balanced for a long time and were over $30,000 out of balance. The assignors had paid large salaries to some of their employees, and they would not work for the assignee for any less.

Appellant seeks to charge appellee with what is called a shortage in his accounts of the articles sold. This shortage was obtained by taking the list of articles in the inventory and comparing it with those sold, as reported by the assignee. As has already been seen, the

inventory was not reliable, and any statement based on such a calculation would have been an incorrect one, especially as it seems that part of the statement was not made from definite data, but was estimated and drawn from other sources than the inventory and the sales list. We think the Appellate Court was right in disallowing all charges against the assignee based on the alleged discrepancy between the inventory and the sales list. The assignee declared on oath that he had sold all the goods that came to his hands, and had accounted for them as either sold or on hand, and his statement is un-contradicted by competent evidence.

Appellant alleges that certain auction sales were fraudulently made, especially the final or closing-out sale, and insists that appellee should be charged with the difference between what the sales actually realized and the inventory appraisement. The closing-out sale seems to have been perfectly fair and thoroughly adver-tised, and there is no evidence to the contrary. We find no sufficient evidence to impeach any of the auction sales. Mere inadequacy of price, where it is not gross, is not sufficient.

It is claimed that appellee employed too many per-sons in his service and paid them unreasonable salaries. The county court charged him with part of the salary paid Henning and part of that paid Stewart. The Ap-pellate Court held these proper credits for the assignee. We concur in this view. While the salaries of some of the men were high, still, in view of the nature of the business and their knowledge of it, their services were necessary for appellee to have. We think, also, it was proper to allow Stewart's salary up to the time of mak-ing the supplemental report.

Complaint is made that the amount paid Mills & Keeler for professional services was excessive, and that the charge should not be allowed for the further reason that, as attorneys, they represented interests antago-

nistic to the assignee. This contention is not sustained. As to the value of their services appellant offered no evidence, and the appellee testified that it was a reasonable amount. The county court disallowed part of it, and the Appellate Court restored the whole amount of fees as a credit. The credit was proper under the evidence.

Complaint is also made of the commission allowed the auctioneer. No evidence was offered by appellant on the subject, and neither the county court nor the Appellate Court has reduced the amount paid on that ground. It is conceded, however, by appellee that the auctioneer has been over-paid, and this over-payment should be charged to appellee.

It is further contended that the appellee is chargeable with the amount of duty he paid on the wheels he took out of bond. There were nearly two hundred bicycles in bond at the custom house in Peoria which had been shipped to the insolvents by Bonnick & Co., of England, and which had been partly paid for. There is no merit in this contention. The wheels could not be made available by the assignee without paying the duty on them. There was no error in allowing this credit. That the wheels did not realize all they cost, as contended by the appellant, was unfortunate, but we cannot say that the assignee, in the exercise of his best judgment in the matter, acted in such a way as to make him chargeable with the resultant loss, if any there was.

As to the separate items of interest charged against the assignee by the county court, that is not before us on this appeal. The principles upon which a trustee should be charged with profits or interest arising from the lending or use by him of the trust funds for his personal gain are well settled and have been frequently stated by this court. *Ogden* v. *Larrabee,* 57 Ill. 389; *Asay* v. *Allen,* 124 id. 391; *Lehman* v. *Rothbarth,* 159 id. 270.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*